**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EXTREME PLASTICS PLUS, INC., *et al.*,[1] | ) | Case No. 16-10221 (CSS) |
| | ) | |
| Debtors. | ) | (Joint Administration Pending) |
| | ) | |

**MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) PROHIBITING
UTILITY PROVIDERS FROM ALTERING, REFUSING, OR DISCONTINUING
UTILITY SERVICES, (II) DEEMING UTILITY PROVIDERS ADEQUATELY
ASSURED OF PAYMENT, AND (III) ESTABLISHING PROCEDURES FOR
RESOLVING REQUESTS FOR ADEQUATE ASSURANCE OF PAYMENT**

Extreme Plastics Plus, Inc. ("Extreme Plastics") and EPP Intermediate Holdings, Inc.

(collectively, the "Debtors"), as debtors and debtors-in-possession in the above-captioned cases,

hereby file their Motion for Entry of Interim and Final Orders (i) Prohibiting Utility Providers

from Altering, Refusing or Discontinuing Utility Service, (ii) Deeming Utility Providers

Adequately Assured of Payment, and (iii) Establishing Procedures for Resolving Requests for

Adequate Assurance of Payment (the "Motion").  In support of this Motion, the Debtors have

filed the Declaration of Ryan S. Bouley in Support of Chapter 11 Petitions and First Day

Pleadings (the "Bouley Declaration").  In further support hereof, the Debtors respectfully state as

follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The Debtors confirm

their consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax
identification number, are Extreme Plastics Plus, Inc. (6913) and EPP Intermediate Holdings, Inc. (6129).
The location of the Debtors' corporate headquarters and service address is: 360 Epic Circle Dr., Fairmont,
WV 26554.

Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue of these cases and this Motion is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are sections 105(a) and 366 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### BACKGROUND

4.      On January 31, 2016 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court") commencing the above-captioned chapter 11 cases.  The factual background regarding the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these bankruptcy cases, is set forth in detail in the Bouley Declaration, filed concurrently herewith and fully incorporated by reference.[2]

5.      The Debtors have continued in possession of their respective properties and have continued to operate and maintain their business as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      No trustee or examiner has been appointed in these chapter 11 cases, and no

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bouley Declaration.

committees have yet been appointed or designated.

## **RELIEF REQUESTED**

7.       By this Motion, the Debtors seek entry of (i) an interim order, in the form attached hereto as Exhibit A (the "Order"), and (ii) a final order (the "Final Order"), in the form attached hereto as Exhibit C which grant the following relief:

(a) prohibiting the Utility Providers (as defined below) from altering, refusing or discontinuing service to the Debtors on account of prepetition invoices, including making demands for security deposits or accelerated payment terms;

(b) providing that the Utility Providers have "adequate assurance of payment" within the meaning of section 366 of the Bankruptcy Code, based, inter alia, upon the Debtors' establishment of a segregated, newly-created, interest-bearing deposit account (the "Adequate Assurance Account") containing an amount equal to approximately fifty percent (50%) of the Debtors' estimated average monthly cost of Utility Services (as defined below) for the period after the Petition Date, which may be adjusted by the Debtors for reasons specified herein following the final hearing on this Motion; and

(c) establishing procedures for resolving requests for additional adequate assurance and authorizing the Debtors to provide adequate assurance of future payment to the Utility Providers.

8.       Uninterrupted Utility Services (as defined below) are necessary to preserve the value of the Debtors' estates while the Debtors devote their efforts to the reorganization process. A disruption of Utility Services at the Debtors' locations would likely be costly to the Debtors as the Debtors would be forced from the outset of these chapter 11 cases to focus on finding replacement Utility Providers (if available) and Utility Services, rather than focusing on their reorganization efforts.  It is therefore critical that the Debtors continue to have uninterrupted Utility Services.

## BASIS FOR RELIEF REQUESTED

### A.    Utility Services

9.    In connection with their business, the Debtors incur utility expenses in the ordinary course of business for, among other things, water and sewer, electricity, gas, telephone, data services, waste removal and other similar services (collectively, the "Utility Services") from various utility companies and other providers (the "Utility Providers").

10.    A non-exhaustive list of the Utility Providers providing Utility Services to the Debtors is attached hereto as Exhibit B (the "Utility List").[3]  In the prepetition period, the Debtors paid a monthly average of approximately $36,000.00 to the Utility Providers for Utility Services.  Debtors are current on their utility payments.

11.    The Debtors seek the relief requested in this Motion in order to preserve the protections that Utility Providers have under the Bankruptcy Code, while affording the Debtors an opportunity to provide and negotiate adequate protection without facing the threat of imminent termination of Utility Services.  In particular, the Debtors request approval of certain procedures that balance the protections afforded the Utility Providers under section 366 of the Bankruptcy Code and the Debtors' need for continuous and uninterrupted Utility Services.

### B.    The Proposed Adequate Assurance

12.    Section 366 of the Bankruptcy Code prohibits utilities from immediately altering, refusing, or discontinuing service to a debtor at the beginning of a bankruptcy case.  However, pursuant to section 366(c)(2) of the Bankruptcy Code, a utility provider may refuse or

---

[3] The Debtors have exercised their best efforts to list all of their Utility Providers in Exhibit B, but it is possible that certain Utility Providers may have been omitted from this list.  Additionally, Debtors may have deposits with some utilities, but Debtors do not know the exact amount of such deposits.  The Debtors reserve the right to amend the Utility List to add any Utility Providers that were omitted therefrom and to request that the relief requested herein apply equally to all such entities.  The Debtors also reserve the right to argue that any of the entities now or hereafter appearing on the Utility List are not "utilities" within the meaning of section 366(a) of the Bankruptcy Code.  Furthermore, the relief

discontinue service to a chapter 11 debtor after the expiration of 30 days from the debtor's petition date if the debtor has not furnished the utility provider with adequate assurance of future payment.

13.     The Debtors fully intend to pay all postpetition obligations owed to the Utility Providers in a timely manner, consistent with the ordinary course of operating their business after the Petition Date.  However, in order to provide adequate assurance of payment for future services to the Utility Providers as set forth in section 366(c) of the Bankruptcy Code, the Debtors propose to deposit an initial sum equal to approximately 50% of the Debtors' estimated average monthly cost of Utility Services (the "Adequate Assurance Deposit") into the Adequate Assurance Account within 5 days after the entry of the Order.  The Adequate Assurance Deposit will serve as a cash security deposit to provide adequate assurance of payment for postpetition Utility Services.  As noted above, during the prepetition period, the Debtors paid a monthly average of approximately $36,000.00 to the Utility Providers for Utility Services.  Accordingly, the Debtors propose that the Adequate Assurance Deposit equal 50% of such approximate spending, or $18,000.00.

14.     The Debtors further propose to maintain the Adequate Assurance Account with a minimum balance equal to 50% of the Debtors' estimated average monthly cost of Utility Services through the Final Hearing (as defined below) on the Motion.  Thereafter, the Debtors propose to periodically adjust the amount in the Adequate Assurance Account to reflect the following factors: (i) the termination of Utility Services by the Debtors regardless of any Additional Assurance Requests (as defined below); (ii) any agreements between the Debtors and the applicable Utility Providers; and (iii) to remove any amount spent on Utility Services from

requested herein shall apply to all of the Debtors' accounts with every Utility Provider listed in Exhibit B.

Utility Providers that hold postpetition deposits or other security from the Debtors for such services.  These adjustments will permit the Debtors to maintain the Adequate Assurance Account with an amount that consistently provides the Utility Providers that do not otherwise hold deposits or security for their Utility Services with a half-monthly security deposit on account of such services.

15.    The Debtors expect that operating income will be sufficient to pay for their postpetition Utility Services.  The Debtors submit that the Adequate Assurance Deposit and the Debtors' ability to make postpetition Utility Services payments in the ordinary course of business pursuant to the terms of their proposed order authorizing the use of cash collateral, (the "Proposed Adequate Assurance"), constitute sufficient adequate assurance to the Utility Providers within the meaning of section 366 of the Bankruptcy Code.  These protections will ensure that all Utility Providers have adequate assurance of payment throughout these chapter 11 cases, and the Debtors believe that no other or further assurance is necessary.  If any Utility Provider believes adequate assurance is required (under Section 366 of the Bankruptcy Code) beyond the protections described herein, the Debtors submit that such Utility Provider must request assurance pursuant to the procedures described below (the "Adequate Assurance Procedures").

C.    **The Proposed Adequate Assurance Procedures**[4]

16.    To ensure that all Utility Providers receive adequate notice of the Proposed Adequate Assurance, the Debtors propose that the Court approve and adopt the following Adequate Assurance Procedures:

---

[4] This section is intended as a summary of the Adequate Assurance Procedures.  If there is a discrepancy between the Motion and the Order or the Final Order, the Order and the Final Order shall control in all respects.

(a)   The Debtors will serve a copy of the Order by first-class mail on each Utility Provider on the Utility List within two (2) business days after the Order is entered.

(b)   In the event that a Utility Provider is not satisfied with the Proposed Adequate Assurance provided by the Debtors, the Utility Provider must serve a request for additional adequate assurance (an "Additional Assurance Request") so that it is received by proposed Debtors' counsel at the following addresses no later than 5 business days prior to the Final Hearing (as defined below) (the "Additional Assurance Request Deadline"): Sullivan Hazeltine Allinson LLC; 901 North Market Street, Suite 1300, Wilmington, Delaware, 19801 Attn: William D. Sullivan and William A. Hazeltine.

(c)   Any Additional Assurance Request must: (i) be made in writing, (ii) set forth the location(s) for which Utility Services are provided, (iii) include a summary of the Debtors' payment history relevant to the affected account(s), including any security deposits, (iv) set forth what the Utility Provider would accept as satisfactory adequate assurance of payment, and (v) set forth a fax and an electronic mail address to which the Debtors may respond to the Additional Assurance Request.

(d)   Upon the Debtors' receipt of an Additional Assurance Request, the Debtors will either (i) advise the Utility Provider in writing on or before a day that is not less than 2 business days prior to the Final Hearing (as defined below) that the Additional Assurance Request is acceptable, (ii) consensually resolve the Additional Assurance Request with the Utility Provider prior to the Final Hearing, or (iii) contest the Utility Provider's Additional Assurance Request pursuant to section 366(c)(3) of the Bankruptcy Code and request that the Court determine the adequacy of assurance of payment with respect to that particular Utility Provider at the Final Hearing.

(e)   Without further order of the Court, the Debtors may enter into agreements granting additional adequate assurance to a Utility Provider serving an Additional Assurance Request, if the Debtors, in their discretion, determine that the Additional Assurance Request is reasonable.

(f)   If the Debtors agree that the Additional Assurance Request is acceptable or the Debtors and the Utility Company consensually resolve the Additional Assurance Request before the Final Hearing (as defined below), the Debtors may remove the Utility Company from the Utility List and after the Final Hearing, the amount in the Adequate Assurance Account shall be reduced by the amount corresponding to the two-week average ascribed by the Debtors to the services such entity provided to the Debtors prior to the Petition Date. The Debtors and the Utility Providers may also consensually agree to alter the amount in the Adequate Assurance Account based on an agreed recalculation of the amount of applicable Utility Service to be provided by the Utility Provider on a going forward basis.

(g)   If the Debtors determine that the Additional Assurance Request is not reasonable and are not able to reach an alternative resolution with the Utility

Provider, the Debtors will request that the Court make a determination on the Additional Assurance Request at the Final Hearing and the Final Hearing will be an evidentiary hearing at which the Court will determine whether the Adequate Assurance Account and the additional adequate assurance of payment requested by the Utility Provider should be modified pursuant to section 366(c)(3)(A) of the Bankruptcy Code.[5]   Pending resolution of such dispute at the Final Hearing, the relevant Utility Provider shall be restrained from altering, refusing, or discontinuing Utility Service to the Debtors on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance, unless otherwise ordered by the Court.

(h)  Any Utility Provider that does not serve an Additional Assurance Request by the Additional Assurance Request Deadline shall be deemed to have received adequate assurance of payment that is satisfactory to such Utility Provider within the meaning of section 366(c)(2) of the Bankruptcy Code, and shall further be deemed to have waived any right to seek additional adequate assurance during the course of the Debtors' chapter 11 cases.

17.    The Debtors request that the Court schedule a final hearing on this Motion (the "Final Hearing") within 30 days of the Petition Date.

18.    To the extent that the Debtors subsequently identify additional providers of Utility Services or determine that an entity was improperly included as a Utility Provider, the Debtors seek authority, in their sole discretion and without further order of Court, to amend the Utility List to add or delete any Utility Provider.  If the Debtors add any Utility Providers to the Utility List, the Debtors will file an amended Utility List with the Court.  Additionally, the Debtors will then serve a copy of this Motion, along with the applicable portion of the amended Utility List and any order granting this Motion, on the newly-added Utility Provider within 5 business days after the Debtors file the amended Utility List with the Court (the "Subsequent Service").  Such subsequently added Utility Provider will be subject to the Adequate Assurance Procedures and shall have 5 days from the Subsequent Service to make an Additional Assurance Request.  For

---

[5] Debtors reserve their right to challenge any claim filed by a Utility Provider on any basis, including, without limitation, that such Utility Provider received benefits on account of inclusion as a Utility Provider on the Utility List.

any entity that is removed from the Utility List, the Debtors shall serve that entity with notice of removal and such entity shall have 5 days from the date of service of such notice to object to that removal.

19.    The Debtors further request that all Utility Providers, including subsequently added Utility Providers, be prohibited from altering, refusing, or discontinuing Utility Services to the Debtors absent further order of this Court.

## ARGUMENT

**A.    The Proposed Adequate Assurance Provides Utility Providers with Adequate Assurance of Payment.**

20.    The policy underlying section 366 of the Bankruptcy Code is to protect debtors from utility service cutoffs upon the filing of a bankruptcy case, while at the same time providing utility companies with adequate assurance that the debtor will pay for postpetition services.  See H.R. Rep. No. 95-595, at 350 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6306.  Specifically, under section 366(b) of the Bankruptcy Code, a debtor must provide "adequate assurance" of payment within twenty (20) days after the petition date – subject to modifications, up or down – by the Court after notice and a hearing.  Notably, section 366(c)(2) of the Bankruptcy Code allows, in a chapter 11 case, a utility to alter, refuse, or discontinue service if the debtor has not furnished "adequate assurance" of payment in a form "satisfactory" to the utility within 30 days after the petition date.

21.    While the form of adequate assurance of payment may be limited under subsection 366(c) to the types of security enumerated in subsection 366(c)(1)(A), the amount of the deposit or other form of security remains within the reasonable discretion of the Court.[6]  It is

---

[6] Section 366(c)(1)(A) provides that "assurance of payment" may be in the form of cash deposit, letter of credit, certificate of deposit, surety bond, prepayment of utility consumption, or another form of security that is mutually agreed on between the utility and the debtor.  11 U.S.C. § 366(c)(1)(A).

well established that, in evaluating the adequacy of assurance, courts recognize that adequate assurance of performance does not constitute an absolute guarantee of a debtor's ability to pay. See, e.g., In re Steinebach, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) ("Adequate assurance of payment is not, however, absolute assurance. . . . a Bankruptcy Court is not required to give a [Utility Provider] the equivalent of a guarantee of payment, but must only determine that the utility is not subject to any unreasonable risk of non-payment for postpetition services.") (internal citations omitted).  Courts have also recognized that, in determining the requisite level of adequate assurance, bankruptcy courts should "focus upon the need of the utility for assurance, and to require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources."  Virginia Elec. & Power Co. v. Caldor, Inc.-NY, 117 F.3d 646, 650 (2d Cir. 1997) (emphasis in original) (internal quotations and citations omitted); see also In re Penn. Cent. Transp. Co., 467 F.2d 100, 103-04 (3d Cir. 1972) (affirming bankruptcy court's ruling that no utility deposits were necessary where such deposits would likely "jeopardize the continuing operation of the [debtor] merely to give further security to suppliers who already are reasonably protected").  Accordingly, demands by a utility for additional or alternative adequate assurance should be refused when a debtor's specific circumstances already afford adequate assurance of payment.

22.    The Proposed Adequate Assurance gives the Utility Providers ample assurance of payment in a well-established manner.  The circumstances surrounding the Debtors, including the availability of cash pursuant to their postpetition financing and operating income, indicate that the Debtors will meet their postpetition obligations to the Utility Providers as they come due.  Additionally, to provide further assurance to the Utility Providers, the Debtors seek to make the Adequate Assurance Deposit, the initial amount of which will equal approximately 50% of the

Debtors' average monthly expenditures for all Utility Services (subject to adjustment as described in paragraph 13, <u>supra</u>, after the Final Hearing), into the Adequate Assurance Account. This segregated fund is the equivalent of a cash deposit and provides solid assurance of the Debtors' payment of their future obligations to the Utility Providers. That assurance alone satisfies the requirement for adequate assurance of payment under section 366 of the Bankruptcy Code.

**B.      The Adequate Assurance Procedures Properly Balance the Interests of the Utility Providers and Those of the Debtors and Their Estates.**

23.      The Debtors propose to protect the Utility Providers further by establishing the Adequate Assurance Procedures provided herein, under which any Utility Provider may request additional adequate assurance in the event that it can demonstrate facts and circumstances that merit additional protection.

24.      As noted above, pursuant to section 366(c)(2) of the Bankruptcy Code, in a chapter 11 case, a utility is permitted to alter, refuse, or discontinue utility service if the utility does not receive "during the 30-day period beginning on the date of the filing of the petition . . . adequate assurance of payment for utility service that is satisfactory to the utility." 11 U.S.C. § 366(c)(2). Conceivably, under section 366(c)(2), the Debtors could receive a demand from a Utility Provider at the end of such thirty-day period and be compelled to accede to the demand immediately or face termination of critical Utility Services. To avoid such a drastic result, the Debtors have sought to require Utility Providers to provide notice of their demands for additional assurance on or before the Adequate Assurance Request Deadline, with a Final Hearing on disputed requests to occur at a hearing scheduled within 30 days of the Petition Date.

25.      By establishing the Adequate Assurance Procedures, the Debtors seek to implement an orderly process to determine the amount of assurance of payment that is adequate.

The Debtors submit that the mechanisms proposed in this Motion strike a reasonable, common-sense balance between providing "adequate assurance of payment for utility service that is satisfactory" as set forth in section 366(c)(2) of the Bankruptcy Code, on the one hand, and the Debtors' well-recognized need to conserve cash for use in their business on the other. Without the Adequate Assurance Procedures, the Debtors could be forced to address numerous requests by Utility Providers in an unorganized manner during the critical first stages of their reorganization efforts.

26.     Moreover, the Adequate Assurance Procedures will ensure that all parties act in good faith by establishing a fair process. This will protect the Debtors from an attempt by a Utility Provider to delay a request until the last minute in an effort to force the Debtors to agree to its request or face cessation of essential services.

27.     The relief herein is fully consistent with the rights of the Utility Providers under the Bankruptcy Code. First, the Adequate Assurance Account is one of the acceptable forms of adequate protection set forth in section 366(c)(1)(A) of the Bankruptcy Code. Accordingly, the Debtors are not seeking to bypass the limits on the forms of security imposed by the Bankruptcy Code.

28.     Second, if this Court determines that the Proposed Adequate Assurance constitutes sufficient adequate assurance under section 366(b) of the Bankruptcy Code, the Utility Companies may still request modification of such adequate assurance upon notice and a hearing as permitted by section 366 of the Bankruptcy Code.

29.     Third, the Utility Companies may also exercise their rights under section 366(c)(2) of the Bankruptcy Code, in accordance with the Adequate Assurance Procedures.

30.     In addition to its powers to grant the relief sought in this Motion under section

366, this Court also has the authority to grant the relief requested herein pursuant to section 105(a) of the Bankruptcy Code, which provides that the Court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). For all of the reasons described herein, the Adequate Assurance Procedures protect the Debtors without materially prejudicing the Utility Providers. Therefore, the proposed Adequate Assurance Procedures implement section 366 in a manner fully consistent therewith and are an appropriate exercise of this Court's authority under section 105(a) of the Bankruptcy Code.

31. This Court has granted relief similar to that requested herein – i.e., the establishment of an adequate assurance deposit equal to approximately 50% of monthly expenditures on utilities and comparable adequate assurance procedures – in other chapter 11 cases. *See, e.g.,* In re Swift Energy Co., Case No. 15-12670 (MFW) (Bankr. D. Del. Jan. 5, 2016) [Docket No. 59]; In re Samson Resources Corp., Case No. 15-11934 (CSS) (Bankr. D. Del. Sep. 22, 2015) [Docket No. 92]; In re Hercules Offshore, Inc., Case No. 15-11685 (KJC) (Bankr. D. Del. Aug. 14, 2015) [Docket No. 49]; In re Signal International, Inc., Case No. 15-11498 (MFW) (Bankr. D. Del. Jul. 14, 2015) [Docket No. 58]; In re Cal Dive International, Inc., Case No. 15-10458 (CSS) (Bankr. D. Del. Mar. 6, 2015) [Docket No. 65]. The relief sought in this Motion thus represents a well-supported and reasonable means of adequately assuring payment for the Utility Services while ensuring that the Debtor's business is permitted to operate without the interruption of such services.

## **RESERVATION OF RIGHTS**

32.     Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claims, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.  The Debtors expressly reserve their rights to contest any invoices of a Utility Provider under applicable non-bankruptcy law.  Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's orders is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## **NOTICE**

33.     Notice of this Motion has been served on (i) the Office of the United States Trustee for the District of Delaware; (ii) each of the Debtors' twenty largest unsecured creditors and/or their counsel; (iii) counsel for Citizens Bank, as agent for the Debtors' pre-petition secured lenders; (iv) the United States Department of Justice; (v) the Internal Revenue Service; (vi) all relevant state and local taxing authorities; (vii) the United States Environmental Protection Agency; (viii) all relevant state environmental agencies; (ix) the Utilities Providers; and (x) all parties that have requested special notice pursuant to Bankruptcy Rule 2002.   Notice of the Motion and any order entered hereon will be served on all parties required by Local Rule 9013-1(m).  Due to the urgency of the circumstances surrounding this Motion and the nature of the relief requested, the Debtors respectfully submit that no further notice of this Motion is required.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an Interim Order, in substantially the form attached hereto as Exhibit A, (a) prohibiting the Utility Providers from altering, refusing, or discontinuing services to the Debtors, except as set forth therein; (b) deeming the Utility Providers adequately assured of payment; (c) establishing the Adequate Assurance Procedures; (d) scheduling a Final Hearing on the Motion within 30 days of the Petition Date; and (e) granting such other and further relief as the Court deems just and proper.

Date:  February 1, 2016
      Wilmington, Delaware

SULLIVAN • HAZELTINE • ALLINSON LLC

*/s/ William D. Sullivan*
William D. Sullivan (No. 2820)
Elihu E. Allinson III (No. 3476)
William A. Hazeltine (No. 3294)
901 North Street, Suite 1300
Wilmington, DE 19801
Telephone: (302) 428-8191
Facsimile: (302) 428-8195
Email:  bsullivan@sha-llc.com
       whazeltine@sha-llc.com
       zallinson@sha-llc.com

*Proposed Attorneys for the Debtors*
*and Debtors-in-Possession*

# **<u>EXHIBIT A</u>**

# **<u>PROPOSED INTERIM ORDER</u>**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EXTREME PLASTICS PLUS, INC., *et al.*,[1] | ) | Case No. 16-10221 (CSS) |
| | ) | (Joint Administration Pending) |
| Debtors. | ) | |
| | ) | **Related Docket No. \_\_\_\_** |

**INTERIM ORDER (I) PROHIBITING UTILITY PROVIDERS FROM
ALTERING, REFUSING, OR DISCONTINUING UTILITY SERVICES,
(II) DEEMING UTILITY PROVIDERS ADEQUATELY ASSURED OF
PAYMENT, AND (III) ESTABLISHING PROCEDURES FOR RESOLVING
REQUESTS FOR ADEQUATE ASSURANCE OF PAYMENT**

Upon the Debtors' Motion for Entry of an Interim Order and a Final Order (i) Prohibiting Utility Providers from Altering, Refusing or Discontinuing Utility Service, (ii) Deeming Utility Providers Adequately Assured of Payment, and (iii) Establishing Procedures for Resolving Requests for Adequate Assurance of Payment (the "Motion"); and upon consideration of the Bouley Declaration;[2] and the Court finding that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and (c) notice of the Motion was due and proper under the circumstances; and it appearing that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and after due deliberation, and good and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is **GRANTED** on an interim basis.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Extreme Plastics Plus, Inc. (6913) and EPP Intermediate Holdings, Inc. (6129). The location of the Debtors' corporate headquarters and service address is: 360 Epic Circle Dr., Fairmont, WV 26554.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

1

2.       The Debtors are authorized, but not directed, to pay on a timely basis and in accordance with their prepetition practices, all undisputed invoices for postpetition Utility Services provided by the Utility Providers to the Debtors.

3.       The Debtors shall, within 5 days after entry of this Order, deposit a sum equal to 50% of the Debtors' estimated average monthly cost of Utility Services, which amount totals $18,000.00 (the "Adequate Assurance Deposit"), into an interest-bearing, newly-created, segregated account (the "Adequate Assurance Account"), pending further order of the Court, for the purpose of providing each Utility Provider adequate assurance of payment of its postpetition Utility Services to the Debtors.  Through the date that the Final Order approving the Motion is entered, the Adequate Assurance Account shall be maintained with a minimum balance equal to 50% of the Debtors' estimated average monthly cost of Utility Services.

4.       Pending the Final Hearing, all Utility Providers, including any subsequently added Utility Providers, are prohibited from: (i) altering, refusing or discontinuing Utility Services to the Debtors; (ii) discriminating against the Debtors on account of the commencement of these chapter 11 cases or any unpaid prepetition charges; or (iii) requiring the Debtors to pay a deposit or other security in connection with the provision of post-petition Utility Services, other than in accordance with the Adequate Assurance Procedures.

5.       If a Utility Provider is not satisfied with the Proposed Adequate Assurance provided by the Debtors, including the Adequate Assurance Deposit, the Utility Provider shall make a request for additional adequate assurance (the "Additional Assurance Request") so that it is received by Debtors' counsel at the following addresses:  Sullivan Hazeltine Allinson LLC; 901 North Market Street, Suite 1300, Wilmington, Delaware 19801 Attn: William D. Sullivan and Elihu E. Allinson III.

6.      Any Additional Assurance Request must: (i) be made in writing, (ii) set forth the location(s) for which Utility Services are provided, (iii) include a summary of the Debtors' payment history relevant to the affected account(s), including any security deposits, (iv) set forth what the Utility Provider would accept as satisfactory adequate assurance of payment, and (v) set forth a fax and an electronic mail address to which the Debtors may respond to the Additional Assurance Request.

7.      Without further order of the Court, the Debtors may enter into agreements granting additional adequate assurance to a Utility Provider serving an Additional Assurance Request, if the Debtors, in their discretion, determine that the Additional Assurance Request is reasonable.  If the Debtors determine that the Additional Assurance Request is not reasonable and are unable to reach an alternative resolution with the Utility Provider, the Debtors will contest the Utility Provider's request pursuant to section 366(c)(3) at a hearing (the "Determination Hearing") to be held at a date and time to be scheduled promptly by the Debtors upon notice to the applicable Utility Provider.  Such hearing will be without prejudice to the right of any Utility Provider to seek relief separately under section 366(c)(3) of the Bankruptcy Code.

8.      The Determination Hearing will be an evidentiary hearing at which the Court will determine whether the Adequate Assurance Deposit and the additional adequate assurance of payment requested by the Utility Provider should be modified pursuant to section 366(c)(3)(A) of the Bankruptcy Code.  Pending resolution of such dispute at the Determination Hearing, the relevant Utility Provider shall be restrained from altering, refusing, or discontinuing services to the Debtors on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance.

9.      The Adequate Assurance Deposit shall be deemed adequate assurance of payment for any Utility Provider that fails to make an Additional Assurance Request.

10.     To the extent that the Debtors subsequently identify additional providers of Utility Services or determine that an entity was improperly included as a Utility Provider, the Debtors have the authority, in their sole discretion and without further order of Court, to amend the Utility List to add or delete any Utility Provider.  If the Debtors add any Utility Providers to the Utility List, the Debtors will serve a copy of the Motion, along with the applicable portion of the amended Utility List and the Order, on such Utility Provider within 5 business days after the Debtors file the amended Utility List (the "Subsequent Service").  Such subsequently added Utility Provider will be subject to the Adequate Assurance Procedures set forth herein.  For any entity that is removed from the Utility List, the Debtors shall serve that entity with notice of removal and such entity shall have 5 days from the date of service of such notice to object to that removal.

11.     The Debtors shall serve a copy of this Order by first-class mail on each Utility Provider on the Utility List within two (2) business days of entry of this Order by the Court.

12.     Any interested party who fails to file and serve a written objection to the Motion or the terms of this Order shall be deemed to have consented to the provisions contained herein.

13.     A Final Hearing on the Motion will be held on February ____, 2016 at __:___ __.m. prevailing Eastern Time.  The deadline by which any objections to the Motion must be filed and served on proposed counsel to the Debtors is February ___, 2016 at 4:00 p.m. prevailing Eastern Time.  The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.  Any interested party who fails to file and serve a written objection to the Motion or the terms of this Order shall be deemed to have

consented to the provisions contained therein.

14.    Notwithstanding anything to the contrary herein, the Debtors' rights to challenge any claim on any basis, including, without limitation, claims filed by Utility Providers or entities removed or deemed removed from the Utility List, are preserved.

15.    Nothing in this Order or the Motion shall be deemed to constitute the postpetition assumption or adoption of any agreement under section 365 of the Bankruptcy Code.

16.    This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

Dated: Wilmington, Delaware
        February ___, 2016

_____
The Honorable Christopher S. Sontchi
United States Bankruptcy Judge

# EXHIBIT B

# LIST OF UTILITY PROVIDERS

| Service | Supplier | Account | Address Serviced | Estimated Monthly Cost |
|---------|----------|---------|------------------|------------------------|
| Telecomm/ Datacomm | Alta Worx | 300005710 | 2811 Pearl St., Odessa, TX | $1,000.00 |
| Electricity | American Electric Power (Ohio) | 077-3155961-8 | 66950 Executive Dr., St. Clairsville, OH | $500.00 |
| Telecomm/ Datacomm | AT&T | 83066357758979 | 15931 I-35 Frontage, Moore, TX | $250.00 |
| Telecomm/ Datacomm | AT&T | 830 663-57775 897 9 | 360 Epic Circle Drive, Fairmont, WV | $12,000.00 |
| Telecomm/ Datacomm | AT&T | 287249954347 | 1606 E. Nadine, Hobbs, NM | $550.00 |
| Telecomm/Datacomm | AT&T (OH) | 740-695-70307929 | 66950 Executive Dr, St. Clairesville, OH | $200.00 |
| Telecomm/Datacomm | AT&T Long Distance | 858141543-7 | 360 Epic Circle Drive, Fairmont, WV | $150.00 |
| Water & Sewer | Belmont County Sanitary Sewer District | | 66950 Executive Dr, St. Clairsville, OH | $150.00 |
| Electricity | Champion Energy | | 2811 Pearl St, Odessa, TX | $200.00 |
| Electricity | Champion Energy | | 15931 I-35 Frontage, Moore, TX | $125.00 |
| Water & Sewer | City of Fairmont | 01-018-040254-000 | 360 Epic Circle Drive, Fairmont, WV | $150.00 |
| Water & Sewer | City of Odessa | 219767-191020 | 2811 Pearl St, Odessa, TX | $125.00 |
| Water & Sewer | City of Oklahoma City | 250101402772 | 2425 S Ann Arbor Ave, Oklahoma City, OK | $50.00 |
| Water & Sewer | City of Shinnston | 54-7315-01 | 138 Roush Circle, Fairmont, WV | $100.00 |
| Water & Sewer | City of Shinnston | 54-7318-03 | 148 Roush Circle, Fairmont, WV | $175.00 |
| Water & Sewer | City of Shinnston | 54-7360-03 | 150 Roush Circle, Fairmont, WV | $100.00 |

| Gas | Columbia Gas | 193931360010009 | 66950 Executive Dr, St. Clairsville, OH | $100.00 |
| Telecomm/Datacomm | Comcast | | 1124 Suncreast Village, Morgantown, WV | $160.00 |
| Telecomm/Datacomm | COMCAST | 8993212670303158 | 1478 JEFFERSON AVE OFC , Washington, PA | $100.00 |
| Telecomm/Datacomm | COMCAST | 8993212670264582 | 1478 JEFFERSON AVE STE A , Washington, PA | $350.00 |
| Telecomm/Datacomm | Cox Communications | Account# 0016110066413201 | 2425 S Ann Arbor Ave, Oklahoma City, OK | $300.00 |
| Electricity | Direct Energy | Account # 1380947 | 2811 Pearl St, Odessa, TX | $800.00 |
| Waste Removal | FAYETTE WASTE | TRASH REMOVAL | 1478 JEFFERSON AVE, Washington, PA | $250.00 |
| Telecomm/Datacomm | Frontier | 570-836-2884-080514-3 | 150 Lawson Lane, Tunkhannock, PA | $125.00 |
| Telecomm/Datacomm | Fuego Wireless | 200279600 | 1606 E. Nadine, Hobbs, NM | $80.44 |
| Electricity | MonPower | | 138 Roush Cir, Fairmont, WV | $400.00 |
| Electricity | MonPower | | 148 Roush Cir, Fairmont, WV | $800.00 |
| Electricity | MonPower | | 150 Roush Cir, Fairmont, WV | $250.00 |
| Electricity | MonPower | | New building, Fairmont, WV | $3,000.00 |
| Electricity | MonPower | | 1124 Suncrest Village, Morgantown, WV | $75.00 |
| Electricity | OG&E | 129499158-1 | 2425 S Ann Arbor Ave, Oklahoma City, OK | $400.00 |
| Gas | OG&E | 129499158-1 | 2425 S Ann Arbor Ave, Oklahoma City, OK | $250.00 |
| Gas | Oklahoma Natural Gas | 212666134 2544699 09 | 2425 S Ann Arbor Ave, Oklahoma City, OK | $100.00 |
| Gas | Peoples Natural Gas | 006640999000034 | 138 Roush Cir, Fairmont, WV | $500.00 |
| Gas | Peoples Natural Gas | 006640999000018 | 148 Roush Cir, Fairmont, WV | $125.00 |

| Gas | Peoples Natural Gas | Account # 006640999000026 | 150 Roush Cir, Fairmont, WV | $100.00 |
|---|---|---|---|---|
| Gas | Peoples Natural Gas | Account # 200008965770 | 150 Lawson Lane, Tunkhannock, PA | $250.00 |
| Telecomm/Datacomm | R.S.V.P | | 360 Epic Circle Drive, Fairmont, WV | $700.00 |
| Waste Removal | Republic Services #060 | | 2425 S Ann Arbor Ave, Oklahoma City, OK | $800.00 |
| Waste Removal | SOS MANAGED WASTE, INC | | 1606 E. Nadine, Hobbs, NM | $350.00 |
| Water & Sewer | TARR SUPPLY YARD | WATER BILL | 1478 JEFFERSON AVE, Washington, PA | $750.00 |
| Water & Sewer | TARR SUPPLY YARD | SEWAGE BILL | 1478 JEFFERSON AVE, Washington, PA | $400.00 |
| Telecomm/Datacomm | Verizon Wireless | | 2811 Pearl St, Odessa, TX | $400.00 |
| Telecomm/Datacomm | VERIZON WIRELESS | | 1478 JEFFERSON AVE BLK0, Washington, PA | $3,000.00 |
| Telecomm/Datacomm | VERIZON WIRELESS | | 1478 JEFFERSON AVE BLK0, Washington, PA | $800.00 |
| Telecomm/Datacomm | VTX Communications, LLC | Account# 97012151 | 15931 I-35 Frontage, Moore, TX | $125.00 |
| Waste Removal | Waste Management | | 360 Epic Circle Drive, Fairmont, WV | $1,300.00 |
| Waste Removal | Waste Management - New Mexico | | 2811 Pearl St, Odessa, TX | $600.00 |
| Waste Removal | Waste Management - TX | | 15931 I-35 Frontage, Moore, TX | $100.00 |
| Electricity | WEST PENN POWER | 100101304457 | 1478 JEFFERSON AVE BLK0, Washington, PA | $800.00 |
| Electricity | West Penn Power | 100100620382 | 1478 Jefferson Ave., Building A, Washington, PA | $300.00 |

| Sewer | Whitehall Public Service | 20-930001 | 138 Roush Circle, Fairmont, WV | $25.00 |
|---|---|---|---|---|
| Sewer | Whitehall Public Service | 20-930053 | 148 Roush Circle, Fairmont, WV | $25.00 |
| Sewer | Whitehall Public Service | 20-930064 | 150 Roush Circle, Fairmont, WV | $25.00 |
| Sewer | Whitehall Public Service | 18-402540 | 360 Epic Circle Drive, Fairmont, WV | $25.00 |
| Electricity | Xcel Energy | 54-0010853912-3 | 1606 E. Nadine, Hobbs, NM | $250.00 |

# EXHIBIT C

# PROPOSED FINAL ORDER

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EXTREME PLASTICS PLUS, INC., et al.,[1] | ) | Case No. 16-10221 (CSS) |
| | ) | (Joint Administration Pending) |
| Debtors. | ) | |
| | ) | **Related Docket No. ___** |

**FINAL ORDER (I) PROHIBITING UTILITY PROVIDERS FROM**
**ALTERING, REFUSING, OR DISCONTINUING UTILITY SERVICES,**
**(II) DEEMING UTILITY PROVIDERS ADEQUATELY ASSURED OF**
**PAYMENT, AND (III) ESTABLISHING PROCEDURES FOR RESOLVING**
**REQUESTS FOR ADEQUATE ASSURANCE OF PAYMENT**

Upon the Debtors' Motion for Entry of an Interim Order and a Final Order (i) Prohibiting Utility Providers from Altering, Refusing or Discontinuing Utility Service, (ii) Deeming Utility Providers Adequately Assured of Payment, and (iii) Establishing Procedures for Resolving Requests for Adequate Assurance of Payment (the "Motion"); and upon consideration of the Bouley Declaration;[2] and the Court finding that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and (c) notice of the Motion was due and proper under the circumstances; and it appearing that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and after due deliberation, and good and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is **GRANTED** on a final basis.

2.      All relief granted in the Interim Order is hereby granted on a final basis.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Extreme Plastics Plus, Inc. (6913) and EPP Intermediate Holdings, Inc. (6129). The location of the Debtors' corporate headquarters and service address is: 360 Epic Circle Dr., Fairmont, WV 26554.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

3.      The Debtors are authorized, but not directed, to pay on a timely basis and in accordance with their prepetition practices, all undisputed invoices for postpetition Utility Services provided by the Utility Providers to the Debtors.

4.      The Debtors shall maintain the deposit of a sum equal to 50% of the Debtors' estimated average monthly cost of Utility Services, which amount totals $18,000.00 (the "Adequate Assurance Deposit"), into an interest-bearing, newly-created, segregated account (the "Adequate Assurance Account"), pending further order of the Court, for the purpose of providing each Utility Provider adequate assurance of payment of its postpetition Utility Services to the Debtors.   Until further order of the Court, the Adequate Assurance Account shall be maintained with a minimum balance equal to 50% of the Debtors' estimated average monthly cost of Utility Services.

5.      All Utility Providers, including any subsequently added Utility Providers, are prohibited from: (i) altering, refusing or discontinuing Utility Services to the Debtors; (ii) discriminating against the Debtors on account of the commencement of these chapter 11 cases or any unpaid prepetition charges; or (iii) requiring the Debtors to pay a deposit or other security in connection with the provision of post-petition Utility Services, other than in accordance with the Adequate Assurance Procedures.

6.      If a Utility Provider is not satisfied with the Proposed Adequate Assurance provided by the Debtors, including the Adequate Assurance Deposit, the Utility Provider shall make a request for additional adequate assurance (the "Additional Assurance Request") so that it is received by Debtors' counsel at the following addresses:  Sullivan Hazeltine Allinson LLC; 901 North Market Street, Suite 1300, Wilmington, Delaware, 19801 Attn: William D. Sullivan and Elihu E. Allinson III.

7.    Any Additional Assurance Request must: (i) be made in writing, (ii) set forth the location(s) for which Utility Services are provided, (iii) include a summary of the Debtors' payment history relevant to the affected account(s), including any security deposits, (iv) set forth what the Utility Provider would accept as satisfactory adequate assurance of payment, and (v) set forth a fax and an electronic mail address to which the Debtors may respond to the Additional Assurance Request.

8.    Without further order of the Court, the Debtors may enter into agreements granting additional adequate assurance to a Utility Provider serving an Additional Assurance Request, if the Debtors, in their discretion, determine that the Additional Assurance Request is reasonable.  If the Debtors determine that the Additional Assurance Request is not reasonable and are unable to reach an alternative resolution with the Utility Provider, the Debtors will contest the Utility Provider's request pursuant to section 366(c)(3) at a hearing (the "Determination Hearing") to be held at a date and time to be scheduled promptly by the Debtors upon notice to the applicable Utility Provider.  Such hearing will be without prejudice to the right of any Utility Provider to seek relief separately under section 366(c)(3) of the Bankruptcy Code.

9.    The Determination Hearing will be an evidentiary hearing at which the Court will determine whether the Adequate Assurance Deposit and the additional adequate assurance of payment requested by the Utility Provider should be modified pursuant to section 366(c)(3)(A) of the Bankruptcy Code.  Pending resolution of such dispute at the Determination Hearing, the relevant Utility Provider shall be restrained from altering, refusing, or discontinuing services to the Debtors on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance.

10.     The Adequate Assurance Deposit shall be deemed adequate assurance of payment for any Utility Provider that fails to make an Additional Assurance Request.

11.     To the extent that the Debtors subsequently identify additional providers of Utility Services or determine that an entity was improperly included as a Utility Provider, the Debtors have the authority, in their sole discretion and without further order of Court, to amend the Utility List to add or delete any Utility Provider.  If the Debtors add any Utility Providers to the Utility List, the Debtors will serve a copy of the Motion, along with the applicable portion of the amended Utility List and the Order, on such Utility Provider within 5 business days after the Debtors file the amended Utility List (the "Subsequent Service").  Such subsequently added Utility Provider will be subject to the Adequate Assurance Procedures set forth herein.  For any entity that is removed from the Utility List, the Debtors shall serve that entity with notice of removal and such entity shall have 5 days from the date of service of such notice to object to that removal.

12.     The Debtors shall serve a copy of this Order by first-class mail on each Utility Provider on the Utility List within two (2) business days of entry of this Order by the Court.

13.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.  Any interested party who failed to file and serve a written objection to the Motion or the terms of this Order shall be deemed to have consented to the provisions contained therein.

14.     Notwithstanding anything to the contrary herein, the Debtors' rights to challenge any claim on any basis, including, without limitation, claims filed by Utility Providers or entities removed or deemed removed from the Utility List, are preserved.

15.     Nothing in this Order or the Motion shall be deemed to constitute the postpetition

assumption or adoption of any agreement under section 365 of the Bankruptcy Code.

16.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

Dated:  Wilmington, Delaware
        February ___, 2016

_____
The Honorable Christopher S. Sontchi
United States Bankruptcy Judge