## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EXTREME PLASTICS PLUS, INC., *et al.*,[1] | ) | Case No. 16-10221 (CSS) |
| | ) | |
| Debtors. | ) | (Joint Administration Pending) |
| | ) | |

## MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING POSTPETITION USE OF CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION TO THE SECURED PARTIES, (C) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(B),  AND (D) GRANTING RELATED RELIEF

Extreme Plastics Plus, Inc. and EPP Intermediate Holdings, Inc. (collectively, the "Debtors"), as debtors and debtors-in-possession in the above-captioned cases (collectively, the "Bankruptcy Cases"), hereby file their *Motion for Entry of Interim and Final Orders (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting Adequate Protection to the Secured  Parties, (C) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(B), and (D) Granting Related Relief* (the "Motion").  In support of this Motion, the Debtors have filed the Declaration of Ryan Bouley in Support of Chapter 11 Petitions and First Day Pleadings (the "Bouley Declaration").  In further support hereof, the Debtors respectfully state as follows:

## I.
## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(M).  Venue of these cases and this Motion is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Extreme Plastics Plus, Inc. (6913) and EPP Intermediate Holdings, Inc. (6129).  The location of the Debtors' corporate headquarters and service address is: 360 Epic Circle Dr., Fairmont, WV 26554.

2.      The statutory predicates for the relief requested herein are sections 105, 361, 362, 363, 506, 507(b) and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004, 7062 and 9014 of the Federal Rules of Bankruptcy Procedure (collectively, the "Bankruptcy Rules"), and Rules 2002-1(b), 4001-2 and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (collectively, the "Local Bankruptcy Rules").

## II.
## BACKGROUND

**A.      General Background**

3.      On January 31, 2016 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court") commencing the Bankruptcy Cases.  The factual background regarding the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of the Bankruptcy Cases, is set forth in detail in the Bouley Declaration, filed concurrently herewith and fully incorporated by reference.

4.      The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      No trustee or examiner has been appointed in the Bankruptcy Cases, and no committees have yet been appointed or designated.

6.      Extreme Plastics is a party to that certain Amended and Restated Credit Agreement with Citizens Bank Of Pennsylvania, as Administrative Agent (the "Agent"), Citizens Bank, National Association, as Sole Lead Arranger and Sole Bookrunner, First National

Bank Of Pennsylvania, as Syndication Agent, and the other lenders party thereto (the "Secured Lenders") dated as of September 3, 2014 (as amended from time to time, the "Secured Facility"). Pursuant to a Guarantee and Collateral Agreement dated as of September 3, 2014 ("Guarantee and Collateral Agreement"), the other Debtor, EPP Intermediate Holdings, Inc. is a Debtor under the Secured Facility.

7.      The principal amount borrowed under the Secured Facility was $ 52,830,511.63. The maturity date was September 3, 2019.  Interest accrues under the Secured Facility at variable rates ranging from LIBOR plus 2.5% to Prime plus 4.5%.  As discussed in more detail below, the Agent asserted that default interest has accrued since October 1, 2015 at the rate of 8.75% for all obligations under the Secured Facility.

8.      The Secured Facility is secured by a lien on substantially all of the Debtors' assets, as well as a pledge of 100% of the equity in Extreme Plastics and EPP Intermediate.

9.      As of the Petition Date, and assuming no accrued postpetition interest, the Debtors' outstanding obligations relating to the Secured Facility total not less than $49,480,677.88, comprised of outstanding principal of $49,146,431.70, and accrued but unpaid interest of $334,246.18 (including interest at the default rate accruing since October 1, 2015), and unpaid fees, costs, and expenses thereunder in an unliquidated amount.

10.     The Debtors defaulted under the Secured Facility because they exceeded the maximum permissible loan-to-coverage ratio of 2.75:1.00 as of September 30, 2015.  The Debtors endeavored to negotiate in good faith with the Agent regarding a forbearance agreement or waiver of this default, but have been unable to reach terms with the Agent on any forbearance or waiver.  The Agent declared default as of October 1, 2015 and the Agent takes the position that such default continues and has not been cured.

11.     Amounts outstanding under the Secured Facility are secured by perfected and valid first priority liens on and security interests in substantially of the Debtors' assets (the "Prepetition Collateral"), including, among other collateral, all Accounts, all Money and Deposit Accounts, all Letters of Credit and Letter-of-Credit Rights, all Receivables, and all other property not otherwise specified (as each of these terms is defined in the Guarantee and Collateral Agreement) (Guarantee and Collateral Agreement, § 3.1).   Therefore, the Secured Lenders have perfected and valid first priority liens on and security interests in any and all of the Debtors' cash, including cash and other amounts on deposit or maintained in any account or accounts by the Debtors and any amounts generated by the collection of accounts receivable or other disposition of the Prepetition Collateral existing as of the Petition Date, and the proceeds of any of the foregoing is the Secured Parties' (as defined herein) cash collateral within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").

**III.**
**RELIEF REQUESTED**

12.     By this Motion, the Debtors seek entry of interim and final orders: (a) authorizing the Debtors to use Cash Collateral, subject to the terms and conditions set forth therein; (b) granting certain adequate protection to the Secured Parties; (c) scheduling the Final Hearing within approximately thirty days of the commencement of these Chapter 11 Cases to consider approval of this Motion on a final basis; and (d) granting related relief.

13.     As set forth in the Bouley Declaration, the Debtors require immediate access to Cash Collateral to ensure that they are able to continue the operation of their business. To date, the Debtors have been unable to obtain commitments for postpetition financing, such that the Cash Collateral is the Debtors' sole source of funding for their operations and the costs of administering the chapter 11 process. Absent authority to immediately use Cash Collateral, the

Debtors, their creditors and the estates generally would suffer irreparable harm because the Debtors would immediately cease operations, which, in turn, would cause an immediate and pronounced deterioration in the value of the Debtors' business. Thus, the Debtors' access to Cash Collateral is absolutely necessary to preserve and maximize value for the benefit of all of the Debtors' stakeholders.

14.    As further set forth herein, the Interim Order provides adequate protection in the form of superpriority claims and adequate protection liens to protect the Secured Parties against any diminution in value arising from the Debtors' use of Cash Collateral or the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code. The Debtors further propose to make disbursements pursuant to a budget annexed to the Interim Order as Exhibit 1 (the "Budget"), subject to permitted variances.

15.    Access to existing Cash Collateral on an interim basis will provide the Debtors with the liquidity necessary to ensure that the Debtors have sufficient working capital and liquidity to operate their business and thus preserve and maintain the going concern value of the Debtors' estates. Without such access to liquidity, the Debtors' ability to navigate through the chapter 11 process will be jeopardized, to the detriment of the Secured Parties and all of the estate's other stakeholders. As a result, the Debtors have an immediate need to use Cash Collateral to ensure sufficient liquidity throughout the pendency of these Chapter 11 Cases.

**IV.**
**CONCISE STATEMENT OF THE**
**MATERIAL TERMS OF THE INTERIM ORDER**

16.     The following chart contains a summary of the material terms of the Interim

Order, in accordance with Bankruptcy Rule 4001(b)(1) and Local Bankruptcy Rule 4001-

2(a)(ii):[2]

| **Material Terms** | **Summary of Material Terms** | **Para(s). of Interim Order** |
|---|---|---|
| **Entities with an Interest in Cash Collateral**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(i)* | The Secured Lenders:<br>Citizens Bank, N.A.<br>First National Bank of Pennsylvania<br>First Commonwealth Bank<br>HSBC Bank USA<br>First Niagara<br>Customers Bank<br>S&T Bank<br><br>Citizens Bank Of Pennsylvania, as Administrative Agent<br><br>Citizens Bank, National Association, as Sole Lead Arranger and Sole Bookrunner<br><br>First National Bank Of Pennsylvania, as Syndication Agent | Introductory Paragraph |
| **Purpose for Use of Cash Collateral**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(ii)*<br>*Local Bankruptcy Rule 4001-2(a)(i)* | The Debtors seek authority to use Cash Collateral for, among other things, working capital, general corporate purposes and administrative costs and expenses of the Debtors incurred in the Chapter 11 Cases, including first-day related relief subject to the terms hereof, pursuant to and in accordance with the 13-week cash collateral budget attached as Exhibit 1 to the Interim Order (as the same may be updated in accordance with the terms of this Interim Order, the "Interim Budget"). | ¶¶ 2, 3 |
| **Budget**<br>*Bankruptcy Rule 4001(b)(1)(B)(ii)* | The Interim Budget is defined above and attached as Exhibit 1 to the Interim Order. | ¶ 3 |
| **Duration of Use of Cash Collateral / Events of Default** | Under the Interim Order, the Debtors request use of Cash Collateral for an interim period of thirty (30) days following the Petition Date. | ¶ 7 |

---

[2] This summary is qualified in its entirety by reference to the provisions of the Interim Order. The proposed Interim Order will control in the event of any inconsistency between this Motion and the proposed Interim Order.

| Material Terms | Summary of Material Terms | Para(s). of Interim Order |
|---|---|---|
| *Bankruptcy Rule 4001(b)(1)(B)(iii)*<br>*Local Bankruptcy Rule 4001-2(a)(ii)* | In addition, the Debtors' right to use the Cash Collateral pursuant to this Interim Order shall terminate (the date of any such termination, the "<u>Termination Date</u>") without further notice or court proceeding on the earliest to occur of five (5) business days (any such five-business-day period of time, the "Default Notice Period") following the delivery of a written notice (any such notice, a "<u>Default Notice</u>") by the Agent to the Debtors, Counsel for the Debtors, the U.S. Trustee, and counsel to the Committee of the occurrence of any of the events set forth in any of clauses (a), (b), and (c):<br>  (a) Failure of the Debtors to: (i) comply with any material provision of this Interim Order; or (ii) comply with any other covenant or agreement specified in this Interim Order (other than those described in clause (i) above) in any material respect;<br>  (b) The Debtors shall grant, create, incur or suffer to exist any postpetition liens or security interests other than: (i) those granted pursuant to this Interim Order; (ii) carriers', mechanics', operator's, warehousemen's, repairmen's or other similar liens arising in the ordinary course of business for amounts outstanding as of the Petition Date, even if recorded after the Petition Date; (iii) pledges or deposits in connection with workers' compensation, unemployment insurance and other social security legislation; (iv) deposits to secure the payment of any postpetition statutory obligations, performance bonds and other obligations of a like nature incurred in the ordinary course of business; and (v) any other junior liens or security interests that the Debtors are permitted to incur under the Credit Agreement; or<br>  (c) There shall be a breach by any Debtor of any material provisions of the Final Order, or the Final Order shall cease to be in full force and effect or shall have been reversed, modified, amended, stayed, vacated or subject to stay pending appeal, in the case of any modification or amendment. | |
| **Proposed Adequate Protection**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(iv)*<br><br>*Local Bankruptcy Rule 4001-2(a)(i)(B)* | The adequate protection provided to the Secured Lenders, includes:<br>• allowed superpriority administrative claims against the Debtors as provided in section 507(b) of the Bankruptcy Code, with priority in payment over any and all unsecured claims and administrative expense claims against the Debtors;<br>• replacement liens on the Prepetition Collateral<br>• adequate protection liens, including a first priority lien and/or replacement lien on, and | ¶¶ 5 and 6 |

| **Material Terms** | **Summary of Material Terms** | **Para(s). of Interim Order** |
|---|---|---|
| | security interest in Unencumbered Property;<br>• adherence to a Budget that maintains cash in the possession of the Debtors at the level that existed on the Petition Date;<br>• maintenance of the Debtors' cash manage-ment arrangements in a manner consistent with the Cash Management Order; and<br>• continued compliance with the financial reporting requirements set forth in the Credit Agreement. | |
| **Liens on Chapter 5 Actions**<br><br>*Local Bankruptcy Rule 4001-2(a)(i)(D)* | None. | |
| **Carve-Out**<br><br>*Local Bankruptcy Rule 4001-2(a)(i)(F)* | Reserved for final order | ¶ 5(c) |
| **Cross-Collateralization**<br><br>*Local Bankruptcy Rule 4001-2(a)(i)(A)* | None, other than replacement liens as adequate protection. | |
| **Findings re Validity/ Perfection/Amount**<br><br>*Local Bankruptcy Rule 4001-2(a)(i)(B)* | None. | |
| **Challenge Period**<br><br>*Local Bankruptcy Rule 4001-2(a)(i)(B)* | None. | |
| **506(c) Waiver**<br><br>*Local Bankruptcy Rule 4001-2(a)(i)(C)* | None. | |
| **552(b) Waiver**<br><br>*Local Bankruptcy Rule 4001-2(a)(i)(H)* | None. | |
| **Releases**<br><br>*Local Bankruptcy Rule 4001-2(a)(ii)* | None. | |

| Material Terms | Summary of Material Terms | Para(s). of Interim Order |
|---|---|---|
| | | |
| **Provisions Deeming Prepetition Debt to be Postpetition Debt**<br><br>*Local Bankruptcy Rule 4001-2(a)(i)(E)* | None. | |
| **Non-Consensual Priming**<br><br>*Local Bankruptcy Rule 4001-2(a)(i)(B)* | None. | |

## V.
## HIGHLIGHTED PROVISIONS UNDER LOCAL RULE 4001-2(a)(i)

17.     Local Bankruptcy Rule 4001-2 requires that certain provisions contained in the Interim Order be highlighted and that the Debtors provide justification for the inclusion of such highlighted provisions.  The Debtors believe that the following provisions of the Interim Order are required to be identified in accordance with Local Bankruptcy Rule 4001-2 and that such provisions are justified and necessary in the context and circumstances of these cases.

  a.   **Local Rule 4001-2(a)(i)(A) — *Cross-Collateralization*.** The Orders do not provide for cross-collateralization, other than replacement liens as adequate protection.

  b.   **Local Rule 4001-2(a)(i)(B) — *Validity, Perfection, and Amount of Prepetition Liens.*** The Orders do not contain any such provisions.

  c.   **Local Rule 4001-2(a)(i)(C) — *506(c) Waiver*.** The Orders do not contain any such provisions.

  d.   **Local Rule 4001-2(a)(i)(D) — *Liens on Avoidance Actions*.** The Orders do not contain any such provisions.

  e.   **Local Rule 4001-2(a)(i)(E) — *Provisions Deeming Prepetition Debt to be Post Petition Debt*.** The Orders do not contain any such provisions.

  f.   **Local Rule 4001-2(a)(i)(F) — *Disparate Treatment of Professionals Retained by the Committee.*** In compliance with Local Rule 4001-2(a)(i)(F), the Interim Order contains no provisions that provide for disparate treatment

for professionals retained by the Committee, if any, with respect to the Carve Out. The Interim Budget does include a line item for Committee professional fees. See Interim Order, Ex. 1.

g. **Local Rule 4001-2(a)(i)(G) — *Non-Consensual Priming*.** The Orders do not provide for non-consensual priming of any existing secured lien, The priming liens granted to the Secured Lenders and Agent as adequate protection expressly shall not prime (i) valid, perfected, and unavoidable liens in existence as of the Petition Date or (ii) valid and unavoidable liens in existence for amounts outstanding as of the Petition Date that are perfected after the Petition Date, as permitted by Bankruptcy Code section 546(b), which valid, perfected, and unavoidable liens are senior in priority to the security interests and liens in favor of the Secured Lenders. *See* Interim Order ¶ ___.

h. **Local Rule 4001-2(a)(i)(R) — *Provisions Affecting the Court's Power to Consider the Equities of the Case*.** The Orders do not contain any such provisions.

## VI.
## NEED FOR CASH COLLATERAL

18.    The preservation of value of the Debtors' businesses hinge upon obtaining access to cash collateral.  The Debtors use cash on hand and cash flow from operations to satisfy payroll, pay suppliers, meet overhead, and make any other payments that are essential for the continued management, operation, and preservation of the Debtors' businesses. The ability to satisfy these expenses as and when due is essential to the Debtors' continued operation of their businesses during the pendency of these cases.  Indeed, without access to Cash Collateral the Debtors and their estates would suffer immediate and irreparable harm.

19.    The Debtors intend to use such cash collateral to, among other things, fund their operations to enable the preservation of the business and reorganization under Chapter 11. Pursuant to the Interim Order, the interim cash collateral period requested is 30 days from the Petition Date.

In conjunction with the Orders and this request to use Cash Collateral, the Debtors have formulated the Budget.  The Debtors believe that the Budget will provide the Debtors with

adequate liquidity. The Interim Budget contains line items for each category of cash flows anticipated to be received or disbursed during the time period for which the Budget is prepared. The Debtors believe that the Budget includes all reasonable, necessary, and foreseeable expenses to be incurred in connection with the operation of their business for the period set forth in the Budget.

## VII.
## SUPPORTING AUTHORITY

**A.    The Use of Cash Collateral is Warranted and Should Be Approved.**

20.    The Debtors' use of property of their estates, including the Cash Collateral, is governed by section 363 of the Bankruptcy Code, which provides in relevant part that:

> If the business of the debtor is authorized to be operated under section . . . 1108 . , . of this title and unless the court orders otherwise, the [debtor] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1). Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may not use cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).

21.    It is essential to the Debtors' successful reorganization and the going concern value of their businesses that they have sufficient funds to operate in the ordinary course, and at a level that is on par with their prepetition performance. Absent the use of Cash Collateral, the Debtors will not have sufficient working capital to (a) make payments to employees, vendors, or suppliers, (b) satisfy ordinary operating costs, and (c) fund the administrative costs of these chapter 11 cases.  Accordingly, the Debtors submit that the use of Cash Collateral is in the best interests of the Debtors' estates and should be approved.

**B.     The Debtors' Proposed Grant of Adequate Protection to Use Cash Collateral is Appropriate.**

22.     Pursuant to section 364(c) of the Bankruptcy Code, a court may authorize a debtor to incur debt that is (a) entitled to superpriority administrative expense status, (b) secured by a lien on otherwise unencumbered property, or (c) secured by a junior lien on encumbered property if the debtor cannot obtain postpetition credit on an unsecured basis, on an administrative expense priority or secured solely by junior liens on the debtor's assets.  See 11 U.S.C. § 364(c);  In re Ames Dept. Stores, Inc., 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990) (debtor must show that it has made a reasonable effort to seek other sources of financing under section 364(a) and (b) of the Bankruptcy Code); In re Crouse Group, Inc., 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987), modified on other grounds, 75 B.R. 553 (debtor seeking unsecured credit under section 364(c) of the Bankruptcy Code must prove that it was unable to obtain unsecured credit pursuant to section 364(b) of the Bankruptcy Code).

23.     Pursuant to section 363(c) of the Bankruptcy Code, the Debtors may only use Cash Collateral of the Secured Lenders, either subject to the consent of those parties or the grant of adequate protection. 11 U.S.C. § 363(c)(2). Section 363(e) of the Bankruptcy Code provides that upon request of an entity that has an interest in property to be used by a debtor, the court shall prohibit or condition such use as is necessary to provide adequate protection of such interest. 11 U.S.C. § 363(e).

24.     Generally, what constitutes adequate protection is decided on a case-by-case basis See In re Columbia Gas Sys., Inc., 1992 WL 79323, at *2 (Bankr. D Del. Feb. 18, 1992); In re Mosello, 195 B.R. 277, 289 (Bankr. SDNY 1996) ("the determination of adequate protection is a fact-specific inquiry . . . left to the vagaries of each case"); see also In re Realty Southwest Assocs., 140 B.R. 360 (Bankr. S.D.N.Y. 1992); In re Beker Indus. Corp., 58 B.R. 725, 736

(Bankr. S.D.N.Y. 1986) (the application of adequate protection "is left to the vagaries of each case, but its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process") (citation omitted); see also In re Continental Airlines Inc., 154 B.R. 176, 180-181 (Bankr. D Del. 1993).

25.     The Debtors intend to provide the Secured Lenders with adequate protection, which includes: (a) allowed superpriority administrative claims pursuant to section 507(b) of the Bankruptcy Code; (b) replacement liens on Prepetition Collateral; (c) liens, including first-priority liens on Unencumbered Property, to the extent of any diminution in value of their interests in the Prepetition Collateral, including Cash Collateral (collectively, the "Adequate Protection Liens"); (d) adherence to a Budget that maintains cash in the possession of the Debtor at the level that existed on the Petition Date; (e) maintenance of the Debtors existing cash management system; and (f) the Debtors' compliance with the Budget, and other financial reporting.

26.     The Secured Lenders will inherently benefit from the Debtors' proposed use of the Cash Collateral, which will prevent avoidable diminution of the value of the Cash Collateral and enhance the likelihood of preserving, or even increasing, the Debtors' overall going concern value as the Debtors proceed with their chapter 11 cases. Preservation of the Debtors' business as a going concern in and of itself serves to provide such parties "adequate protection" for Bankruptcy Code purposes. See 495 Cent Park Ave. Corp., 136 B.R. 626, 631 (Bankr. S.D.N.Y. Feb. 4, 1992) (noting that, in determining whether protection is "adequate," courts consider "whether the value of the debtor's property will increase as a result of the" use of collateral or provision of financing); In re Sky Valley, Inc., 100 B.R. 107, 114 (Bankr. N.D. Ga. 1988) ("an

increase in the value of the collateral . . . resulting from superpriority financing could result in adequate protection." (citation omitted)), aff'd, 99 B.R. 117 (N.D. Ga. 1989)

27.    The Debtors believe that the proposed adequate protection is necessary and appropriate to ensure that the Debtors can continue to use Cash Collateral. Accordingly, the Debtors submit that the adequate protection is (a) fair and reasonable, (b) necessary to satisfy the requirements of sections 363(c)(2) and 363(e) of the Bankruptcy Code, and (c) in the best interests of the Debtors and their estates. Moreover, courts in this district and others have approved similar adequate protection packages in other recent chapter 11 cases. See e.g., In re Samson Resources Corp., No. 15-11934 (CSS) (Bankr. D.Del. Sept. 26, 2015); In re Sabine Oil & Gas Corp., No. 15-11835 (SCC) (Bankr. S.D.N.Y. July 17, 2015); In re Quicksilver Res. Inc., No. 15-10585 (LSS) (Bankr. D. Del. Mar. 19, 2015) (interim order); In re Entegra Power Grp. LLC, No. 14-11859 (PJW) (Bankr. D. Del. Aug. 6, 2014) (same); In re Energy Future Holdings Corp., No. 14-10979 (CSS) (Bankr D Del. May 2,2014) (same);

**C.    The Scope of the Carve-Out is Appropriate.**

28.    The Debtors intend to seek a carve out for professional fees in the final cash collateral order.  The Adequate Protection Obligations will be subject to the Carve Out. Without the Carve Out, the Debtors and other parties in interest may be deprived of certain rights and powers because the services for which professionals may be paid in these chapter 11 cases would be restricted. See In re Ames Dep't Stores, Inc., 115 B.R. 34, 40 (Bankr S.D.N.Y. 1990) (observing that courts insist on carve-outs for professionals representing parties in interest because absent such protection, the collective rights and expectations of all parties-in-interest are sorely prejudiced"). The Carve Out does not directly or indirectly deprive the Debtors' estates or other parties in interest of possible rights and powers. Additionally, the Carve Out protects against administrative insolvency during the course of these chapter 11 cases by ensuring that

assets remain for the payment of the Clerk of the Court or U.S. Trustee fees and professional fees

of the Debtors and a statutory committee.

**D.    Approval of the Debtors' Use of Cash Collateral On An Interim Basis Is Necessary To Prevent Immediate And Irreparable Harm.**

29.    Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash

collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than

fourteen (14) days after the service of such motion. Upon request, however, the court is

empowered to conduct an interim expedited hearing on the motion at which it may authorize a

debtor to use cash collateral to the extent necessary to avoid immediate and irreparable harm to a

debtor's estate. See Bankruptcy Rule 4001(b)(2). Section 363(c)(3) of the Bankruptcy Code

authorizes the court to conduct a preliminary hearing and to authorize the use of cash collateral

"if there is a reasonable likelihood that the [debtor] will prevail at the final hearing under [section

363(e) of the Bankruptcy Code]." 11 U.S.C. § 363(c)(3). Local Rule 4001-2(b) provides that the

Court may grant interim relief pending review of interested parties of proposed debtor-in-

possession financing arrangements, including use of cash collateral, provided that such relief is

only what is necessary to avoid immediate and irreparable harm to the estate pending a final

hearing and, absent extraordinary circumstances, the proposed interim order does not include any

of the provisions identified in Local Rule 4001-2(a)(i)(A)-(F). Local Rule 4001-2(b)

30.    Pending the Final Hearing, the Debtors require immediate access to Cash

Collateral in order to satisfy the day-to-day financing needs of the Debtors' business operations.

Access to liquidity will address key constituents' concerns regarding the Debtors' financial health

and ability to continue operations in light of these chapter 11 cases. The Debtors have an

immediate need for access to liquidity to, among other things, permit the orderly continuation of

the operation of their business, maintain business relationships with their vendors and suppliers,

make payroll, and satisfy other essential working capital and operational needs, all of which are required to preserve and maintain the Debtors' going concern value for the benefit of all parties in interest. To protect the Secured Lenders, the Debtors' use of Cash Collateral will be limited to the amounts set forth in the Interim Budget, subject to authorized variances, thereby providing additional safeguards for all creditors of the Debtors' estates.

31.    Accordingly, pursuant to section 363(c)(3) of the Bankruptcy Code, Bankruptcy Rule 4001(6), and Local Rule 4001-2(b), the Debtors request that the Court conduct an expedited hearing on this motion, and enter the Interim Order authorizing the Debtors to use Cash Collateral.

**E.    Modification Of The Automatic Stay Provided Under Section 362 Of The Bankruptcy Code Is Appropriate Under The Circumstances.**

32.    The relief requested herein contemplates a modification of the automatic stay to permit the Debtors to grant the security interests and liens described above to the Secured Lenders, and to perform such acts as may be requested to assure the perfection and priority of such security interests and liens. Stay modifications of this kind are ordinary and standard features for the use of cash collateral, and in the Debtors' business judgment, are reasonable and fair under the present circumstances.

**VIII.**
**REQUEST FOR FINAL HEARING**

33.    Pursuant to Bankruptcy Rule 4001(c)(2), the Debtors respectfully request that the Court set a date for the Final Hearing that is no later than thirty (30) days following the Petition Date.

**IX.**
**REQUEST FOR WAIVER OF STAY**

34.     The Debtors further seek a waiver of any stay of the effectiveness of the Interim

Order approving this Motion.  Bankruptcy Rule 400I(a)(3) provides that "[an] order granting a

motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the

expiration of fourteen days after entry of the order, unless the court orders otherwise." As set forth

herein, the use of Cash Collateral is necessary to allow the Debtors to operate their business,

transition smoothly into these chapter 11 cases and reorganize.

**X.**
**NOTICE**

35.      Notice of this Motion has been served on (i) the Office of the United States

Trustee for the District of Delaware; (ii) each of the Debtors' twenty largest unsecured creditors

and/or their counsel; (iii) counsel for Citizens Bank, as agent for the Debtors' pre-petition

secured lenders; (iv) the United States Department of Justice; (v) the Internal Revenue Service;

(vi) all relevant state and local taxing authorities; (vii) the United States Environmental

Protection Agency; (viii) all relevant state environmental agencies; (ix) Citizens Bank; and (x)

all parties that have requested special notice pursuant to Bankruptcy Rule 2002.   Notice of the

Motion and any order entered hereon will be served on all parties required by Local Rule 9013-

1(m).  Due to the urgency of the circumstances surrounding this Motion and the nature of the

relief requested, the Debtors respectfully submit that no further notice of this Motion is required.

**XI.**
**NO PRIOR REQUEST**

36.      No previous request for the relief sought herein has been made by the Debtors to

this or any other court.

WHEREFORE, the Debtors respectfully request that the Court: (i) enter the Interim

Order, in substantially the same form as that attached as Exhibit A, granting the relief requested

herein; and (ii) provide such other relief as the Court deems appropriate and just.

Date:  February 1, 2016
       Wilmington, Delaware

**SULLIVAN • HAZELTINE • ALLINSON LLC**

*/s/ William D. Sullivan*
William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
Elihu E. Allinson (No. 3476)
901 North Market Street, Suite 1300
Wilmington, DE 19801
Telephone: (302) 428-8191
Facsimile: (302) 428-8195
Email:  bsullivan@sha-llc.com
        whazeltine@sha-llc.com
        zallinson@sha-llc.com

*Proposed Attorneys for the Debtors*
*and Debtors-in-Possession*

**Exhibit A**

**Interim Cash Collateral Order**

(to be filed)